IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JACK IN THE BOX INC. and<br>JACK IN THE BOX EASTERN DIVISION<br>L.P.<br>     *Plaintiffs,*<br><br>    vs.<br>SAN-TEX RESTAURANTS, INC., ANIL S.<br>YADAV, ATOUR EYVAZIAN, and<br>VANDANA YADAV<br><br>     *Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 5:20-CV-328 |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

COME NOW, Plaintiffs JACK IN THE BOX INC. and JACK IN THE BOX EASTERN DIVISION L.P. (collectively "Plaintiffs") and file their Original Complaint against Defendants SAN-TEX RESTAURANTS, INC. ANIL S. YADAV, ATOUR EYVAZIAN, and VANDANA YADAV (collectively "Defendants").

## PARTIES

1.      Plaintiff Jack in the Box Inc. is a Delaware Corporation registered to do business in Texas.  The principal office of Jack in the Box Inc. is 9330 Balboa Ave., San Diego, CA 92123.

2.      Plaintiff Jack in the Box Eastern Division L.P., is a Texas Limited Partnership.  The principal office of Jack in the Box Eastern Division L.P. is 9330 Balboa Ave., San Diego, CA 92123.

3.      Defendant San-Tex Restaurants, Inc. ("San-Tex") is a Texas corporation whose address is 21734 Provincial Road, Suite 250, Katy, TX 77479.  San-Tex may be served with process through its registered agent, Atour Eyvazian at 1614 Talcott Lane, Sugar Land TX, 77479.

Plaintiffs request personal service of citation upon Defendant San-Tex through its registered agent at the registered agent's address.

4.      Defendant Anil S. Yadav ("Anil S. Yadav") is an individual whose address is 3550 Mowry Avenue, Suite 301, Freemont, CA 94538.  Anil Yadav may be served at this address or at his offices located at 21734 Provincial Boulevard, Suite 250, Katy, TX 77450.  Plaintiffs request personal service upon Anil Yadav at either address or where he may otherwise be found.

5.      Defendant Atour Eyvazian ("Eyvazian") is an individual whose address is 21734 Provincial Boulevard, Suite 250, Katy, TX 77450.  Eyvazian may be served at this address or at his offices located at 21734 Provincial Boulevard, Suite 250, Katy, TX 77450.  Plaintiffs request personal service upon Eyvazian at either address or where he may otherwise be found.

6.      Defendant Vandana Yadav ("Vandana Yadav") is an individual whose address is 3579 Little Valley Rd., Sunol, CA 94586.  Vandana Yadav may be served at this address or at her offices located at 3579 Little Valley Rd., Sunol, CA 94586.  Plaintiffs request personal service upon Vandana Yadav at either address or where she may otherwise be found.

## JURISDICTION AND VENUE

7.      This is an action for infringement arising under the Lanham Act, 15 U.S.C. § 1051, et. seq.  Accordingly, this Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and § 1338 and supplemental jurisdiction over the Texas state law claims under 28 U.S.C. § 1367(a).

8.      All of the JACK IN THE BOX restaurants that are the subject of this lawsuit are operated by San-Tex and are located within the Western District of Texas.  San-Tex has its principal place of business in the State of Texas.

9.     Defendant Eyvazian is a principal owner and directs the operations of San-Tex's JACK IN THE BOX restaurants in the Western District of Texas which are the subject of this suit. Eyvazian resides in the State of Texas.

10.     Defendants Atour Eyvazian and Anil S. Yadav entered into franchise agreements with Jack in the Box, Inc. and each agreed to all terms of several Jack in the Box franchise agreements.  Each such francise agreement (referred to herein as "Franchise Agreement") provides in part "JIB [Jack-In-The-Box] may file any suit against Franchisee, arising out of this Agreement or otherwise, in any federal or state court within the judicial district… where Franchisee resides, or where the Franchise Restaurant is or was located, or where the claim arose; and Franchisee hereby consents to and waives all questions of personal jurisdiction and venue for the purpose of carrying out this provision."

11.     San Tex Inc.'s breaches of the subject Franchise Agreements, and trademark infringements, misappropriation of Jack in the Box Inc.'s intellectual property, and trespass of Jack in the Box Eastern Division L.P real property have occurred and are occurring at JACK IN THE BOX restaurants located within the Western District of Texas.

12.     All or a substantial portion of the events giving rise to this claim have occurred and will continue to occur in the Western District of Texas.

13.     The JACK IN THE BOX restaurants that are the subject matter of this lawsuit are located within the Western District of Texas.

14.     This Court has general and specific jurisdiction over the Defendants.

15.     Specifically, Defendants met with representatives of Jack in the Box Inc. multiple times in San Antonio, Texas from October 2016 to February 2020 to discuss operations of the 48 JACK IN THE BOX restaurant locations operated by San-Tex in the San Antonio market.

16.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendants are subject to the jurisdiction of the Court in this judicial district.

## FACTUAL BACKGROUND

### A.     The JACK IN THE BOX Franchise System.

17.     Jack in the Box Inc. operates and franchises JACK IN THE BOX restaurants, one of the nation's largest restaurant chains.

18.     There are over 2200 franchised and company-owned restaurants in the JACK IN THE BOX system.

19.     Jack in the Box Eastern Division L.P owns and/or leases hundreds of real estate sites for JACK IN THE BOX restaurants, including the sites at issue in this case.

### B.     Jack in the Box Inc. Owns and Licenses JACK IN THE BOX Trademarks.

20.     Jack in the Box Inc. owns the federally registered trademark JACK IN THE BOX and certain other service marks, trademarks, names, logos and commercial symbols.

21.     Jack in the Box Inc. owns the following federal trademark registrations, among others:

| MARK | REG NO | REG DATE | GOODS |
|------|--------|----------|-------|
|  | 3783515 | 5/4/2010 | Chicken breast strips; [fish and chips;] prepared entrees consisting primarily of teriyaki flavored chicken and vegetables; sandwiches, namely, hamburger, chicken, sausage, fish; breakfast burritos; tacos; milk shakes; sandwiches; snack |

| | | | |
|---|---|---|---|
| | | | cakes; cheesecake; restaurant services |
| JACK IN THE BOX (TYPED DRAWING) | 1957318 | 11/28/1995 | Onion rings, French fries, nan-dairy creamer, milk, guacamole, jelly, garden salads, pickles, meat, poultry; burritos, cakes, ketchup, cheesecake, coffee, egg rolls [taquitos,] sandwiches [turnovers, pastries], sugar, seasonings, pancake syrup, mustard, pancakes, salsa, [beef gyros,' salad dressings, mayonnaise, prepared meals and sauces; soft drinks [and fruit juices |
|  | 1806576 | 8/31/1993 | Restaurant services |
| JACK IN THE BOX | 841334 | 12/26/1967 | Frozen food products, namely, hamburger patties, tacos, chicken [shrimp] onion rings [and apple turnovers]; [and] hamburger sauce |

| | | | [shrimp sauce] and taco sauce |
|---|---|---|---|
| JACK IN THE BOX | 1108721 | 10/3/61 | Restaurant services |
| JACK IN THE BOX | 0848246 | 4/30/1968 | Syrups for making soft drinks |
|  | 5917007 | 11/19/2019 | Restaurant services |

22.　　These trademark registrations are on the Principal Register of the United States Trademark Office.  These registered trademarks are sometimes referred to herein as the "Marks." They give Jack in the Box Inc. the statutory *prima facie* exclusive right to use each of the Marks for each registration's specified goods and services in the United States.

**C.　　Jack in the Box Inc. Maintains JACK IN THE BOX Restaurant Quality Control.**

23.　　Jack in the Box Inc. strives to ensure that the food its restaurants and its franchisees' restaurants serve is high quality and safe food.

24.　　Jack in the Box Inc. maintains a comprehensive system that monitors the quality of foods and food products received from third parties as well as the facilities that produce the food.

25.　　Jack in the Box Inc. maintains a comprehensive system that monitors the preparation and quality of foods served by its and its franchisee's restaurants.

26.　　Jack in the Box Inc.'s food-quality and safety program has been recognized by third parties as a superior quality and safety program.

27.　　Jack in the Box Inc. maintains a nationally recognized food-safety training and certification program administered in partnership with the National Restaurant Association.

28.     JACK IN THE BOX restaurant managers and grill employees are expected by Jack in the Box Inc to receive special grill certification training and  to be re-certified annually.

29.     Jack in the Box Inc. has expended time, effort and money to develop a distinctive JACK IN THE BOX restaurant format and operating system utilizing specialized and unique techniques, knowledge, expertise, skill and proprietary information.

30.     The JACK IN THE BOX restaurant format and operating system includes but is not limited to restaurant operating and management systems and standards; specifications and procedures for the purchase, preparation and sale of JACK IN THE BOX food, beverages and other products; and a distinctive JACK IN THE BOX building design, decor and color scheme (all collectively, the "System").

31.     The System includes, among other things, the following elements:

a.      know-how, specifications, methods and procedures for the content, preparation, marketing and sale of food and beverages, which are described in operating manuals for JACK-IN-THE-BOX restaurants and in other written materials;

b.      plans and specifications for distinctive, standardized premises and interior and exterior formats, styles, designs, decors, fixtures, equipment, layouts and signs which are described in operating manuals for JACK IN THE BOX restaurants and in other written materials; and

c.      a public image that each JACK IN THE BOX restaurant is a unit in an established quick-service restaurant system, and that all JACK IN THE BOX restaurants are operated with uniform high standards for product quality and service and aesthetic effect of the restaurant premises.

32.     Jack in the Box Inc. grants Franchise Agreements to operate JACK IN THE BOX restaurants using the System and the Marks pursuant to the terms of the JACK-IN-THE-BOX Franchise Agreements.

33.     Each Jack in the Box Inc. JACK IN THE BOX Franchise Agreement contains a license to the Franchise Agreement's franchisee permitting the franchisee use of the JACK IN THE BOX  Marks and the System, but only insofar as the franchisee remains in full compliance with all requirements of the Franchise Agreement.

**D.     Defendants Entered Into Franchise Agreements, Leases, and Other Agreements with Plaintiffs for Operation of a Number of Jack in the Box Franchises**

34.     On or about August 23, 2010, Defendants Atour Eyvazian and Anil S. Yadav entered into Franchise Agreements with Plaintiff Jack in the Box, Inc. and agreed to all terms of said Franchise Agreements including the terms referenced above, in connection with 49 restaurant locations in Texas.[1]

35.     These Franchise Agreements were contemporaneously assigned to Defendant San-Tex through an Assignment and Agreement executed August 23, 2010.[2]

36.     Defendant San-Tex contemporaneously entered into a lease agreement with Plaintiff Jack in the Box Eastern Division L.P. for each of the 49 franchise locations on August 23, 2010.  Each such lease agreement is a "Lease Agreement."

37.     In all of the Lease Agreements, San-Tex agreed to use and occupy the respective leased premises solely for the operation of a properly franchised JACK IN THE BOX restaurant and only in strict conformance to the standards established by both Jack in the Box, Inc. and Jack in the Box Eastern Division L.P.

---

[1] *See* Exemplar Jack in the Box Restaurant Franchise Agreement, attached hereto as Exhibit A; *see also* Chart of Franchise Locations, attached hereto as Exhibit B.  All of the Franchise Agreements are identical except for the listing of the restaurant location, restaurant number and termination date.
[2] *See* Exemplar of Assignment and Agreement, attached hereto as Exhibit C.

38.     In 2011, Atour Eyvazian requested Jack in the Box, Inc. to consent to the transfer of his ten percent (10%) partnership interest in San-Tex to Defendant Vandana Yadav.

39.     Through execution of an Assumption and Consent to Assumption of Franchise Agreement in April 2011[3] and an Assumption and Consent to Assumption of Franchise Lease Agreement in May 2011[4], Defendant Vandana Yadav assumed all obligations of the "Tenant" under the leases and agreed to be bound by all of the terms and provisions of the Lease Agreements.

40.     Vandana Yadav also agreed to be bound by all the terms and provisions of the Franchise Agreements and agreed to be jointly and severally liable and responsible for performance of all of San-Tex's obligations under the Franchise Agreements and leases.

41.     Defendants San-Tex, Atour Eyvazian, Anil S. Yadav and Vandana Yadav are jointly and severally liable to Plaintiffs for all of San Tex Inc.'s obligations to Plaintiffs claimed in this suit.

**E.     San-Tex's Restaurants' Operational and Financial Deficiencies.**

42.     In 2017, Jack in the Box, Inc. advised San-Tex of operational deficiencies with the following 49 San-Tex locations.

| Loc. No. | Street | City | Street | Zip |
|---|---|---|---|---|
| 805 | 303 San Pedro Ave | San Antonio | TX | 78212 |
| 806 | 742 Sw Military Dr | San Antonio | TX | 78221 |
| 807 | 3315 San Pedro Ave | San Antonio | TX | 78212 |
| 808 | 5423 Evers Rd | San Antonio | TX | 78238 |
| 809 | 4319 Vance Jackson Rd | San Antonio | TX | 78230 |
| 814 | 502 N New Braunfels Ave | San Antonio | TX | 78202 |
| 817 | 6811 W Military Dr | San Antonio | TX | 78227 |
| 819 | 7206 Blanco Rd | San Antonio | TX | 78216 |
| 822 | 1331 Sw Loop 410 | San Antonio | TX | 78227 |
| 827 | 1260 S Seguin Ave | New Braunfels | TX | 78202 |
| 829 | 118 N General Mcmullen Dr | San Antonio | TX | 78237 |
| 830 | 1070 E Court St | Seguin | TX | 78155 |

---

[3] *See* Exemplar of Assumption and Consent to Assumption of Franchise Agreement, attached hereto as Exhibit D.
[4] *See* Exemplar of Assumption and Consent to Assumption of Franchise Lease Agreement, attached hereto as Exhibit E.

| 847 | 5311 Rigsby Ave | San Antonio | TX | 78222 |
| 851 | 500 Sidney Baker St | Kerrville | TX | 78028 |
| 853 | 2465 Babcock Rd | San Antonio | TX | 78229 |
| 854 | 4626 Fredericksburg Rd | San Antonio | TX | 78201 |
| 855 | 9330 Wurzbach Rd | San Antonio | TX | 78240 |
| 856 | 1619 Bandera Rd | San Antonio | TX | 78228 |
| 857 | 2209 Sw Military Dr | San Antonio | TX | 78224 |
| 858 | 1818 N Foster Rd | San Antonio | TX | 78244 |
| 859 | 11615 NIH 35 | San Antonio | TX | 78233 |
| 861 | 1810 W IH 10 | Seguin | TX | 78155 |
| 868 | 7720 Fm 78 | San Antonio | TX | 78244 |
| 870 | 15037 Nacogdoches Rd | San Antonio | TX | 78247 |
| 871 | 10683 Huebner Rd Ste 101 | San Antonio | TX | 78240 |
| 900 | 5850 Culebra Rd | San Antonio | TX | 78228 |
| 903 | 3706 S Zarzamora St | San Antonio | TX | 78225 |
| 908 | 3523 Se Military Dr | San Antonio | TX | 78223 |
| 913 | 2100 Culebra Rd | San Antonio | TX | 78228 |
| 914 | 523 Fair Ave | San Antonio | TX | 78223 |
| 915 | 3702 Sw Military Dr | San Antonio | TX | 78211 |
| 923 | 6405 Nw Loop 410 | San Antonio | TX | 78238 |
| 926 | 2235 Ne Loop 410 | San Antonio | TX | 78217 |
| 928 | 2299 Nw Military Hwy | Castle Hills | TX | 78213 |
| 930 | 11729 Bandera Rd | San Antonio | TX | 78250 |
| 932 | 801 E Main St | Uvalde | TX | 78801 |
| 933 | 4606 Rittiman Rd | San Antonio | TX | 78218 |
| 934 | 2311 Fredericksburg Rd | San Antonio | TX | 78201 |
| 935 | 7150 San Pedro Ave | San Antonio | TX | 78216 |
| 936 | 903 Probandt St | San Antonio | TX | 78204 |
| 940 | 718 S Zarzamora St | San Antonio | TX | 78207 |
| 941 | 8558 Huebner Rd Ste 102 Bldg 1 | San Antonio | TX | 78240 |
| 944 | 1214 W Old Us Highway 90 | San Antonio | TX | 78227 |
| 947 | 100 Braddie Dr | Del Rio | TX | 78840 |
| 950 | 12503 Sw Loop 410 | San Antonio | TX | 78224 |
| 4719 | 506 New Valley Hi Dr | San Antonio | TX | 78227 |
| 4723 | 21034 Us Highway 281 N | San Antonio | TX | 78258 |
| 4772 | 5509 Roosevelt Ave | San Antonio | TX | 78214 |
| 4773 | 11211 Potranco Rd | San Antonio | TX | 78253 |

43.     On or about July 12, 2017, Jack in the Box, Inc. sent San-Tex written pre-default notices which outlined specific problems and a plan of action to remedy them.[5]

---

[5] *See* Pre-Default Letter dated July 12, 2017, attached hereto as Exhibit F.

44.     In 2018, Jack in the Box, Inc. advised San-Tex of continued material operational deficiencies with the 49 San-Tex locations.

45.     In 2019, Jack in the Box, Inc. again advised San-Tex of continued operational deficiencies with the 49 San-Tex locations.

46.     On or about February 14, 2019, Jack in the Box, Inc. sent San-Tex written pre-default notices which outlined specific problems and a plan of action to remedy them.[6]

47.     Jack in the Box Inc. informed San-Tex in 2017-2019 that San-Tex's JACK IN THE BOX restaurants had material deficiencies that were breaches of San-Tex's Franchise Agreements.

48.     Specifically, Jack in the Box Inc. informed San-Tex in some or all of these letters of San-Tex's JACK IN THE BOX restaurant deficiencies including, but not limited to the following: no working HVAC in 28 of the restaurants (one restaurant was shut down by OSHA due to extreme heat and danger to employees and guests); major exterior and parking lot damage, including graffiti on exterior, excessive pot holes in parking lot, exterior lights out; kitchen equipment not working or missing, including holding cabinets, grills, fryers and oil filtering systems; walk-in coolers broken, which creates a food safety danger; ice machines not working; water leakage apparent in multiple restaurants; broken kitchen exhaust, resulting in excess smoke; and two of the restaurants are the subject of multiple OSHA violations that pose a risk to the health and safety of the employees.

49.     Through these 2017-19 letters, and other correspondence, San-Texas was given numerous notices of and opportunities to correct the San-Tex JACK IN THE BOX restaurant deficiencies.

50.     San-Tex has not cured the restaurant deficiencies described in Jack in the Box Inc.'s deficiency letter to San-Tex on or about July 12, 2017.

---

[6] *See* Pre-Default Letter dated February 14, 2019, attached hereto as Exhibit G.

51.     San-Tex has not cured the restaurant deficiencies described in Jack in the Box Inc.'s deficiency letter to San-Tex on or about February 14, 2019.

52.     After San-Tex's failure to cure the deficiencies outlined in the written pre-default notices on or about June 11, 2019, Jack in the Box, Inc. sent San-Tex a written Notice of Default of Franchise Agreements for Operational Issues (the "Notice of Default").[7]

53.     The Notice of Default provided formal notice of San-Tex's default of its obligations under the terms of San-Tex's Franchise Agreements and its leases for all 49 JACK IN THE BOX restaurant locations operated by San-Tex .

54.     The Notice of Default also outlined the history of Jack in the Box, Inc's extensive efforts to work with San-Tex to remedy the issues:[8]

- October 18, 2016: JIB sent Mr. Eyvazian and San-Tex Restaurants Inc. a Demand for Improvement Letter that outlined, in detail, JIB's concerns about operational and financial trends in the Restaurants.  That Letter demanded that you correct the numerous operational deficiencies or JIB would issue a formal default notice.
- July 2017: JIB's operational re-inspection revealed that you made some minor improvements, but several areas of concern remained.
- July 12, 2017: JIB sent a follow up letter to Mr. Eyvazian, which specifically outlined the plan of action to remedy the remaining issues.  The letter gave you a deadline of August 15, 2017 by which to cure.
- December 5, 2017: JIB sent an email to Mr. Eyvazian expressing concern with the condition of the Restaurants in the San Antonio market.  The email outlined specific issues that were required to be addressed immediately.
- January 30, 2018: JIB sent a Notice of Default to Mr. Eyvazian, which referenced the October 2016 letter and detailed what must be cured in order to avoid termination of your Franchise Agreements.
- June 14, 2018: In order to measure progress, JIB set operational goals for the Restaurants, as several issues remained.
- October 2018 – November 2018:  Visits to individual Restaurants in the market revealed food safety issues, equipment failures, and operational failures. JIB sent multiple emails to Mr. Yadav requesting immediate correction action.
- December 21, 2018:  JIB sent Mr. Yadav an email which outlined observations from the Franchise Business Consultant's ("FBC's") recent visit to the market. The email detailed issues with lighting, equipment and operations, and demanded immediate corrective action.
- January 18, 2019:  JIB sent an email to Mr. Yadav concerning a Restaurant in the San Antonio market that failed five (5) Health Department Inspections in a row between October 16, 2018 and January 8, 2019.  The email demanded immediate corrective action.
- February 14, 2019: JIB issued a pre-default letter to Mr. Yadav, which provided you 90 days from the date of the letter to get all equipment, facilities, HVAC, refrigeration, lighting, building and landscape to JIB standards, and 90 days to get the operational metrics within JIB's standards.

---

[7] *See* Notice of Default Letter dated June 11, 2019, attached hereto as Exhibit H.
[8] *See id.*

55.     The Notice of Default demanded cure of the operational deficiencies described in the written corrrespondence by August 1, 2019.

56.     San-Tex did not timely cure the defaults and deficiencies delineated in the Notice of Default by August 1, 2019.

57.     Due to San-Tex's failure to timely cure the operational deficiencies described in the Notice of Default, on August 8, 2019, Jack in the Box, Inc. issued a written Notice of Termination of Franchise Agreements and Grant of Temporary License (the "Notice of Termination").[9]

58.     The Notice of Termination advised San-Tex that the operational deficiencies outlined in the Notice of Default were not timely cured.

59.     Since the Notice of Termination, San-Tex's performance has continued to fail to satisfy the required standards of performance.

60.     Additionally, most of the defaults and deficiencies in San-Tex's JACK IN THE BOX restaurants delineated in the Notice of Default still exist as of the filing of this pleading.

61.     The following photographs were taken in November 2019, and accurately reflect conditions found at location J871:




---

[9] *See* Notice of Termination dated August 8, 2019, attached hereto as Exhibit I.  Because San-Tex failed to agree in writing to the conditions placed on the Temporary License offered, the Temporary License never became effective.

62.     The following photographs were taken in November 2019, and accurately reflect conditions found at location J855:

 

63.     The following photographs were taken in November 2019, and accurately reflect conditions found at location J819:

 

64.     The following photographs were taken in November 2019, and accurately reflect conditions found at location J809:

 

65.     The photographs above are not exhaustive and are mere examples of the operational defaults and deficiencies at San-Tex's restaurants.

66.     The operational defaults and deficiences have been and are far below brand standards for JACK IN THE BOX, and Defendants knew them to be so.

67.     Additionally, many of the operational defaults and deficiences have posed and continue to pose a health and safety risk to Jack in the Box, Inc., its employees and/or customers.

68.     Since 2017, Defendants' deficient operations of the subject restaurants have caused multiple instances of bad publicity for the JACK IN THE BOX brand.

**F.     San-Tex's Franchise Agreements and Lease Agreements Are Terminated**

69.     Section 17(B)(7) of the Franchise Agreement permits Jack in the Box Inc. to terminate the Franchise Agreement and San-Tex's rights under the Franchise Agreement if San-Tex fails on three or more separate occasions within any twenty-four month period to comply with the Franchise Agreement or on two or more separate occasions within any twelve-month period to comply with the same requirement under the Franchise Agreement.

70.     Pursuant to both the Notice of Default and Franchise Agreement, Section 17(B)(7), the Franchise Agreements for the 49 JACK IN THE BOX restaurant locations operated by San-Tex automatically terminated at the end of the cure period on August 1, 2019.

71.     The Notice of Termination provided written confirmation that the Franchise Agreements for the 49 JACK IN THE BOX restaurant locations operated by San-Tex automatically terminated at the end of the cure period on August 1, 2019.

72.     Since August 1, 2019 San-Tex has been operating its JACK IN THE BOX restaurants without Franchise Agreements, licenses or permissions from Jack in the Box Inc.

73.     Since August 1, 2019 San-Tex's operation of JACK IN THE BOX restaurants is an infringement of Jack-In-The-Box Inc.'s trademark rights.

74.     Since August 1, 2019 San-Tex's operation of JACK IN THE BOX restaurants is an infringement of Jack-In-The-Box Inc.'s numerous intellectual property rights.

75.     Pursuant to the cross default clause in the San-Tex Leese Agreements, termination of San-Tex's Franchise Agreements terminated San-Tex's Lease Agreements.

76.      Since August 1, 2019 San-Tex's Lease Agreements have been terminated. San-Tex's current occupancy of the Lease Agreements' premises is thus unlawful.

77.     San-Tex stipulated in the Franchise Agreements to the uniqueness, confidentiality and value of the Marks and the System as well as the advantages and benefits which may be obtained by using the System and the Marks in the operation of a Jack in the Box restaurant.

78.     Upon termination or expiration of a Franchise Agreement, the franchisee's right to use the Marks and the System ends.

79.     Upon termination of San-Tex's Franchise Agreements, the Franchise Agreements have prohibited San-Tex from identifying itself or its restaurants as JACK IN THE BOX restaurants and from using any of the Marks or any mark confusingly similar thereto, and from using or disclosing to others any of Jack in the Box Inc.'s trade secrets, operating procedures, or promotional materials.

80.     Franchisees agree in the Franchise Agreement that upon termination of a franchisee's Franchise Agreement, the franchisee will return to Jack in the Box Inc. all manuals and any other material containing trade secrets, restaurant operating instructions or business practices of Jack in the Box Inc.

**G.     San-Tex Is in Breach of the Franchise Agreements' and Lease Agreements' post-Termination Requirements.**

81.     The Notice of Default made demand on San Tex to perform the post-termination obligations required in its Franchise Agreements upon their termination due to San-Tex's failure to cure defaults, including the obligation to immediately "de-identify" the restaurant locations and

surrender all proprietary materials to Jack in the Box, Inc.  Specifically, Section 17(F) of the Franchise Agreements contains the following requirements:

> F.    Upon termination or expiration of this Agreement, Franchisee's right to use the Marks and the System shall terminate.  Franchisee shall not thereafter identify himself as a JACK IN THE BOX Franchisee, nor use any of the Marks or any mark confusingly similar thereto, nor use or disclose to others any of JIB's trade secrets, operating procedures, or promotional materials.  Upon termination or expiration of this franchise, Franchisee will immediately return to JIB all Manuals, together with all other material containing trade secrets, restaurant operating instructions or business practices of JIB.

82.    To date, San-Tex has failed and/or refused to comply with their post-termination obligations under the Franchise Agreements and the leases.

83.    Because of San-Tex's failure and refusal to comply with its obligations as set forth herein, Plaintiffs have been required to retain the undersigned attorneys and to pay them a reasonable fee for their services in connection with these proceedings and in order to enforce the terms of the Franchise Agreements, the leases, and other collateral agreements.

**H.    Trademark Infringement**

84.    Defendants are using Plaintiffs' Marks to identify Defendants' restaurants, restaurant goods and services, in violation of Plaintiffs' rights.

85.    Defendants' acts complained of herein have injured and are likely to injure Plaintiffs, including injuring their business reputations and diluting the distinctive quality of Plaintiffs' Marks, and are likely to injure the trademarks' value to Plaintiffs.

86.    On information and belief, Defendants do not currently intend to cease using Plaintiffs' Marks to identify Defendants' restaurants and restaurant goods and services.

**I.    The Individual Defendants.**

87.    Defendants Atour Eyvazian, Anil S. Yadav, and Vandana Yadav (the Individual Defendants") have guaranteed San-Tex Inc.'s performance of San-Tex Inc.'s Franchise

Agreements and Lease Agreements with Jack in the Box Inc. and Jack in the Box Eastern Division LLP. The Individual Defendants are liable to Jack in the Box Inc. and Jack in the Box Eastern Division LLP for all of San-Tex Inc.'s obligations to Jack in the Box Inc. and Jack in the Box Eastern Division LLP.

## CAUSES OF ACTION

88.     Plaintiffs make the following claims for relief, each independently and without waiving the other.

## COUNT ONE – BREACH OF CONTRACT

89.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

90.     Defendants have failed to perform in accordance with the terms of the Franchise Agreements, leases and other agreements.

91.     Despite receipt of the Notice, Defendants have failed to cure their operational deficiencies.

92.     As a result of Defendants' failure to cure their operational deficiencies, Defendants have breached the Franchise Agreements, leases and other agreements.

93.     Plaintiffs have been and continue to be damaged as a result of Defendants' breach.

## COUNT TWO – SPECIFIC PERFORMANCE

94.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

95.     Plaintiffs would show that monetary damages are inadequate to remedy Defendants' refusal to comply with their obligations under the Franchise Agreements, leases, and other agreements, including but not limited to their obligation to surrender all proprietary

materials, to "de-identify" themselves with Jack in the Box, and to cease their use of Plaintiffs' trade secrets, the Marks, and the System.

96.    All of Plaintiffs' intellectual property, including, without limtiation, the Marks, trade secrets, and specialized knowledge are unique and irreplaceable such that monetary damages would be a wholly inadequate remedy for their unauthorized use and coversion.

97.    This property is only licensed to parties who agree to comply with the standards set by Jack in the Box, Inc. and cannot be acquired without qualification and the consent of Jack in the Box, Inc.

98.    For all of these reasons, specific performance is appropriate and necessary in order to provide Plaintiffs with the relief to which they are entitled.

99.    Accordingly, Plaintiffs seek judgment of this Court ordering the Defendants to comply with their post-termination obligations under the Franchise Agreements and the leases, including a mandate to surrender all trade secrets and proprietary material and processes, including the following:

        a.    The Marks,

        b.    The System,

        c.    All operating manuals and other written materials for Jack in the Box restaurants,

        d.    All plans and specifications for distinctive, standardized premises and interior and exterior formats, styles, designs, decors, fixtures, equipment, layouts and signs,

        e.    The public image that each Jack in the Box restaurant is a unit in an established quick-service restaurant chain with uniform high standards for product quality and service and aesthetic effect of the restaurant premises,

f.      All signage bearing or depicting the Marks or any one or more of them,

g.      All restaurant operating standards, specifications and procedures,

h.      The Franchised Restaurant buildings and Premises including, without limitation, its landscaping, lighting, fixtures, furnishings, decor, signs and parking area,

i.      All menus, menu panels, posters or similar items,

j.      All specialized equipment situated in the restaurant sites,

k.      All specialized computer hardware and software, equipment and services,

l.      All food, supplies beverage ingredients, paper goods, utensils, packaging, cleaning supplies and uniforms,

m.      All unique food and beverage products as set forth in the Manuals or otherwise produced through the use of the System,

n.      All packaging,

o.      All specialized uniforms and apparel,

p.      All advertising and Promotional Materials, including those distributed or displayed through television, radio, the internet, newspapers, magazines, flyers, posters, billboards, mailing circulars, coupons or gift certificates.

100.    For the purposes of this Complaint, the items enumerated in above-referenced paragraphs are collectively referred to as "the Proprietary Property."

**<u>COUNT THREE – TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT</u>**

101.    Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

102.    The Marks are valid trademarks that are registered on the Principal Register of the United States Trademark Office.

103.    Defendants' use of the Marks after termination of the Franchise Agreements on August 1, 2019 is unauthorized by Plaintiffs.

104.    Defendants knew their continued use of the Marks after termination of the Franchise Agreements on August 1, 2019 was unauthorzied by Plaintiffs.

105.    On information and belief, Defendants' continued use of the Marks after termination of the Franchise Agreements on August 1, 2019 was willful and egregious, in that Defendants have persisted in their infringing conduct despite having been on notice in August 2019 and thereafter that the Franchise Agreements (and their licenses to use the Marks) were terminated.

106.    Defendants' use of the Marks causes confusion or deception because the public is fraudulently led to believe that Defendants are the source of services marked in an unauthorized manner by Defendants with a mark identical or substantially indistinguishable from the Marks.

107.    Defendants' actions constitute trademark infringement in violation of Plaintiffs' rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

108.    Accordingly, as a direct result of Defendants' unlawful activities, Plaintiffs have suffered and will continue to suffer damages in an amount to be determined at trial, including but not limited to an award of Defendants' profits and any actual damages sustained by Plaintiffs, as well as an enhancement of the amounts found as actual damages not exceeding three times such amounts.  15 U.S.C. § 1117(a).  Alternatively, Plaintiffs seek an award of nominal damages.

109.    Plaintiffs also seek the delivery of all articles, including Defendants' marketing materials, signage, et cetera, which make use of Plaintiffs' trademarks in a manner that violates Section 43(a) of the Lanham Act as alleged above.  15 U.S.C. § 1118.

110.    Plaintiffs seeks permanent injunctive relief restraining Defendants from further violating Section 43(a) of the Lanham Act in the manners alleged herein because: (a) Plaintiffs

have suffered and/or will suffer an irreparable injury; (b) other remedies available at law, such as monetary damages, are inadequate to fully compensate Plaintiffs for that injury; (c) a remedy in equity is warranted; and (d) the public interest will not be disserved by an injunction, permanent or otherwise.  15 U.S.C. § 1116(a).

111.    On information and belief, Defendants' alleged misconduct is willful, intentional, and/or conducted in bad faith, thereby rendering this case exceptional within the meaning of section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).  Plaintiffs also seek an award of its reasonable attorney fees for this action and any appeals thereof pursuant to applicable law.

112.    Plaintiffs seek an award of its costs for this action and any appeals thereof pursuant to applicable law.  See 15 U.S.C. § 1117(a); see FED. R. CIV. P. 54(d)(1).

## COUNT FOUR – COMMON LAW TRADEMARK INFRINGEMENT

113.    Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

114.    Plaintiffs have common law rights in the Marks by virtue of the Mark's eligibility for protection and Plaintiffs' status as senior user of the Marks.

115.    The Marks are associated by consumers with goods and services offered by Plaintiffs.

116.    Defendants' acts as described above constitute, *inter alia* common law infringement of Plaintiffs' Marks, resulting in irreparable injury to Plaintiffs.

117.    Defendants' infringement has damaged Plaintiffs in an amount to be determined at trial, including but not limited to loss of goodwill and brand reputation, lost profits, attorneys' fees and costs and pre- and post-judgment interest.

118.    Defendants' infringement has caused and, unless restrained by the Court, will continue to cause Plaintiffs irreparable injury to their goodwill and reputation.  Further use of

the Marks by Defendants in operation of their business must be enjoined by this Court.

## COUNT FIVE – TRADEMARK DILUTION UNDER THE LANHAM ACT

119.    Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

120.    Defendants' unauthorized use of the Marks, or a mark substantially similar thereto, is causing dilution of the Marks through blurring and/or tarnishment. Defendants' use is further impairing the capacity of Plaintiffs to identify and distinguish the goods and services they offer.

121.    Defendants' aforementioned acts constitute trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c).

122.    Defendants' conduct complained of herein constitutes willful trademark dilution in violation of the Lanham Act, entitling Plaintiffs to treble damages and attorney's fees.

## COUNT SIX – FALSE ASSOCIATION UNDER THE LANHAM ACT

123.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

124.    Defendants' alleged actions violate Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) ("Section 43(a) of the Lanham Act"), by false association.  See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1384 (2014) ("Section 1125(a) thus creates two distinct bases of liability:  false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B).").

125.    Defendants' alleged actions are without Plaintiffs' consent and likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, as to the origin, sponsorship, or approval of the Defendants' restaurants

and restaurant goods and services or commercial activities by Plaintiffs.  Such acts constitute

violations of Section 43(a), and Plaintiffs have been and will continue to be injured as a result.

### COUNT SEVEN – UNJUST ENRICHMENT AND MISAPPROPRIATION

126.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth

in this Complaint as if fully set forth herein.

127.     Defendants' acts complained of herein have unjustly enriched Defendants' and

have misappropriated Plaintiffs' property.

### COUNT EIGHT – PUNITIVE AND EXEMPLARY DAMAGES

128.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth

in this Complaint as if fully set forth herein.

129.     On information and belief, Defendants' acts complained of herein have been done

willfully and with reckless disregard for Plaintiffs' rights.  Plaintiffs request punitive and

exemplary damages in an amount not less than ten times Plaintiffs' actual damages and

Defendants' wrongful profits.

### COUNT NINE – DECLARATORY JUDGMENT

130.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth

in this Complaint as if fully set forth herein.

131.     Defendants are irrevocably committed to pursuing in the future the above-described

courses of conduct to Plaintiffs' great immediate and incalculable harm.  Plaintiffs seek a

declaratory judgment pursuant to Title 28, § 2201, United States Code.

132.     Plaintiffs seek declaratory judgment that Plaintiffs' Marks are valid and enforceable

and that Plaintiffs have the exclusive right to use its Plaintiffs' Marks and colorable imitations of

them to identify their registrations, recited goods and services.

133.    Plaintiffs seek a declaratory judgment that Defendants' use of Plaintiffs' Marks as complained of herein infringes Plaintiffs' valid trademark rights.

134.    Plaintiffs seek a declaratory judgment that Defendants' acts complained of herein are unlawful.

## COUNT TEN – INJUNCTIVE RELIEF

135.    Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

136.    Plaintiffs will suffer irreparable injury without the injunctive relief requested herein.  Plaintiffs have no adequate remedy at law without the injunctive relief requested herein.  The injury Plaintiffs face without the injunctive relief requested herein outweighs the injury that will be sustained by Defendants as a result of said injunctive relief requested herein.  The requested injunctive relief will not adversely affect public policy or the public interest.  Plaintiffs seek permanent injunctive relief ordering Defendants to cease their described unlawful courses of action.

## COUNT ELEVEN – CONSOLIDATED ALLEGATIONS

137.    Each of the facts alleged above is alleged together with and in support of each and every cause of action herein.

## PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to answer and appear, and that upon presentation of the requisite proof, Plaintiffs be awarded the following relief:

a.    A judgment against Defendants, jointly and severally, for breach of the Franchise Agreements, the leases, or otherwise caused or occasioned by the actions complained of in this Complaint;

b.   An order of specific performance directing Defendants to comply with all post termination obligations under the Franchise Agreements and the leases;

c.   Judgment and declaratory judgment that Plaintiffs' United States federal trademark registrations identified herein are valid and enforceable;

d.   Judgment and declaratory judgment that Plaintiffs have the exclusive right to use their Marks in each of the United States, Texas, and Bexar County, Texas;

e.   Judgment and declaratory judgment that Defendants' use of Plaintiffs' Marks infringes Plaintiffs' trademark rights in each of the United States, Texas, and Bexar County, Texas;

f.   Judgment and declaratory judgment that Defendants' acts complained of herein are unlawful;

g.   Judgment against Defendants, jointly and severally, awarding Defendants' profits and any actual damages sustained by Plaintiffs, as well as an enhancement of the amounts found as actual damages not exceeding three times such amounts, and for punitive damages, both due to Defendants' willful, egregious and knowing acts as pled herein, undertaken in callous disregard for Plaintiffs' rights;

h.   Judgment granting a permanent injunction mandating and enjoining Defendants, its agents, servants, employees, attorneys, and anyone acting in concert with Defendants:

(1)   from representing to anyone or committing any acts calculated to cause members of the public to believe that Defendants' restaurants and restaurant goods and services have any authority, sponsorship, affiliation, or any connection with Plaintiffs or Plaintiffs' restaurants and restaurant goods and services.

(2)      from using Plaintiff's Marks to identify Defendants' restaurants and restaurant goods and services;

(3)      from using Plaintiffs' Marks to identify Defendants' restaurants and restaurant goods and services or any other words or indicia similar thereto that may cause, or may be likely to cause, confusion, mistake, or deception by the public, alone or in combination with any other word or words;

(4)      from unfairly competing with Plaintiffs;

(5)      from continuing its unlawful acts as complained of herein;

i.      Pre-complaint and post-complaint interest;

j.      The costs, fees, and expenses of attorneys as set forth in the Franchise Agreements and/or the leases; or as otherwise provided by applicable law;

k.      All costs of suit; and

l.      Such other and further relief, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

JACKSON WALKER LLP

By: _Amanda Crouch_____

Amanda N. Crouch
State Bar No. 24077401
acrouch@jw.com
112 E. Pecan Street, Suite 2400
San Antonio, Texas  78205
(210) 978-7784 – Telephone
(210) 978-7790 – Facsimile

- and -

Stacy Allen
State Bar No. 24034185
stacyallen@jw.com
100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2000 – Telephone
(512) 236-2002 – Facsimile

- and -

Samuel S. Allen
State Bar No. 01057000
sallen@jw.com
136 W. Twohig Avenue, Suite B
San Angelo, Texas 76903
(325) 481-2550 – Telephone
(325) 481-2552 – Fax

**ATTORNEYS FOR PLAINTIFFS JACK IN THE BOX, INC. AND JACK IN THE BOX EASTERN DIVISION, LP**

23762800v.10